AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

United States of America

v.

**JOEL RUCCI**
**ANDY RUCCI**

*Defendants*

Case No. 25-MJ-666

## CRIMINAL COMPLAINT

I, **GEORDIE A. STUTZMAN**, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about and including November 21, 2025, in the County of Monroe, in the Western District of New York, Joel Rucci and Andy Rucci, and others known and unknown, did combine, conspire and agree to possess with intent to distribute, and to distribute five kilograms or more of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii), all in violation of Title 21, United States Code, Section 846.

This Criminal Complaint is based on these facts:
*See* attached affidavit.

☒ Continued on the attached sheet.

*Complainant's signature*

GEORDIE A. STUTZMAN
Special Agent
Federal Bureau of Investigation
*Printed name and title*

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P. 4.1 and 41(d) on:

Date: November 26, 2025

City and State: Rochester, New York

*Judge's signature*

HONORABLE MARK W. PEDERSEN
United States Magistrate Judge, WDNY
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA                                   25-MJ-666

v.

JOEL RUCCI,
ANDY RUCCI

        Defendant(s).

State of New York  )
County of Monroe  ) ss
City of Rochester  )

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Geordie A. Stutzman, affirm to the following facts:

    1.    I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately 17 years. My responsibilities include investigating violations of federal and state criminal laws, including crimes involving narcotics trafficking. As such, I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516, and Title 21 of the United States Code.

    2.    I am currently assigned to the FBI's Rochester Resident Agency, which is responsible for investigating violent crime to include investigations involving the illegal possession of firearms and narcotics trafficking. Before my assignment in Rochester, I served

from May 2024 to July 2025 as the Chief of Staff to the Assistant Director of the FBI's Criminal Investigative Division at FBI Headquarters in Washington, DC. From April 2023 to May 2024, I served as the Operations Manager of Operation Panama Express (PANEX), an Organized Crime Drug Enforcement Strike Force based in Tampa, Florida focused on maritime drug smuggling investigations. I worked as a case agent at PANEX from February 2013 to July 2019 and again from August 2022 to April 2023. From July 2019 to July 2022, I worked as an Assistant Legal Attache in Guatemala City, Guatemala where I supported FBI gang and fugitive investigations with a nexus to Guatemala. From June 2009 to February 2013, I was assigned to the FBI's Washington Field Office where I investigated Public Corruption and Government Fraud. Additionally, I am a graduate of the FBI Academy in Quantico, Virginia, where I received training in, among other topics, criminal investigative techniques and federal criminal law. I have also received training in the federal laws pertaining to the possession and distribution of narcotics. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs (including cocaine, among others,) are imported, stored, transported, and distributed, as well as methods of payment for such drugs. I am also familiar with the manner in which proceeds from narcotics trafficking are laundered, and the efforts and strategies drug traffickers will employ to avoid detection by law enforcement. I am aware of the fact that those who distribute controlled substances often use, cryptic, coded, or otherwise indirect language when discussing their illegal activities over the telephone. I am also aware of the fact that drug traffickers will often add adulterants or other additives to their controlled substances to increase the quantity of their distributable product, thereby increasing their profits.

## PURPOSE OF AFFIDAVIT

3. This affidavit is submitted in support of a criminal complaint alleging Joel Rucci (hereinafter referred to as J. Rucci), Andy Rucci (hereinafter referred to as A. Rucci), and others known and unknown did knowingly, willfully, and unlawfully combine, conspire, and agree, together and with others, known and unknown, to possess with intent to distribute and to distribute 5 kilograms or more of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), all in violation of Title 21, United States Code, Section 846.

4. The assertions made herein are based solely upon the personal knowledge of your affiant, or upon information I have received from this investigation, including various police reports produced in relation to the arrest of the defendants, discussions with other law enforcement agents and officers, including the New York State Police Department (NYSP), all of which are true and correct to the best of my knowledge and belief. Since this affidavit is being submitted for a limited purpose, I have not included each and every fact that I know concerning this investigation. Rather, I have set forth only those facts that relate to the issue of whether probable cause exists to believe that the defendant committed the above-mentioned offenses.

## FACTS ESTABLISHING PROBABLE CAUSE

5. Beginning in and around January 2025, members of the New York State Police (NYSP) began investigating the narcotics trafficking activities of A. Rucci. The investigation has revealed that A. Rucci distributes large quantities of cocaine and fentanyl in Rochester, New York. The investigation has further revealed that A. Rucci's narcotics trafficking partner

is his brother J. Rucci. Based on physical and electronic surveillance and records checks, NYSP has identified 15 Mathews Street, Apartment 206, Rochester, New York as the primary residence of A. Rucci. A. Rucci and J. Rucci jointly own and operate Vivus Fitness Lab (hereinafter "Vivus") which is a gym located at 593 Culver Road, Rochester, New York. During the investigation, NYSP investigators have observed A. Rucci traveling multiple times between his primary residence and Vivus.

6. Investigators with the NYSP have utilized a confidential source (CS) during the course of this narcotics investigation. The CS has advised investigators that A. Rucci distributes kilogram quantities of cocaine in the Rochester, New York area. The CS indicated that A. Rucci drives a white Infiniti bearing New York license plate number KGW6799 (hereinafter "Infiniti"). Since June 2025, NYSP investigators utilized the CS to conduct multiple controlled purchases of cocaine from A. Rucci. To date, the CS has purchased over 400 grams of cocaine from A. Rucci. On more than one occasion, investigators have observed A. Rucci operating the Infiniti during a controlled purchase of cocaine with the CS. A records check of the Infiniti revealed that the vehicle is registered to A. Rucci. Investigators have observed A. Rucci at 15 Mathews Street prior to the controlled purchases of cocaine and have also observed A. Rucci at Vivus prior and/or after controlled purchases of cocaine.

7. The CS is personally known to NYSP and has been cooperating with law enforcement since the summer of 2025. The CS's cooperation began pursuant to a plea agreement with the Government in exchange for hoped-for consideration at sentencing. Much of the information provided by CS has been corroborated through independent

investigation, physical and electronic surveillance, and by information received independently and separately from other law enforcement agencies. CS has provided agents reliable information in the past, relative to narcotics trafficking, which has been independently corroborated.

8. Through the course of the investigation, NYSP obtained electronic evidence confirming that the Infiniti was utilized to travel from Rochester to Binghamton and quickly thereafter returned to Rochester. Based upon my training and experience and the information uncovered during the course of this investigation, this type of travel is indicative of illegal narcotics sales and/or resupply activities.

9. On November 21, 2025, investigators conducted physical and electronic surveillance of the Infiniti. Investigators observed the Infiniti traveling south out of the City of Rochester towards the New York State Thruway in the direction of Binghamton. The Infiniti continued east on the New York State Thruway, ultimately traveling to Court Street and Washington Street in Binghamton, NY. The driver of the Infiniti, later identified as J. Rucci, was observed sitting alone on his/her cell phone at the Iron Agave bar in Binghamton, New York. J. Rucci then returned to the Infiniti and began following an unknown gray SUV to a location along Conklin Avenue in the City of Binghamton. Investigators observed the SUV, and the Infiniti make numerous turns and traffic maneuvers while en-route to the location. The Infiniti and the unknown SUV are seen parking down by the river together, the individuals operating the vehicles are observed opening doors, and subjects are observed between the open doors. Shortly thereafter, the Infiniti left the City of Binghamton north on

Interstate 81. Based on the information obtained during the investigation, as well as surveillance of the Infiniti in Binghamton on a prior occasion, investigators believed that the Infiniti was being utilized to visit Binghamton to purchase cocaine to re-distribute in Rochester, New York.

10. NYSP Investigators continued to follow the Infiniti en-route back towards Rochester. When the Infiniti reached the vicinity of Interstate 490 eastbound and State Route 31F in the Town of Pittsford, New York, a marked NYSP unit conducted a traffic stop of the Infiniti. J. Rucci was the driver and sole occupant of the vehicle. The vehicle was then towed to NYSP Troop E Headquarters in Canandaigua, New York where it was searched pursuant to a state warrant. In the rear cabin of the vehicle, NYSP investigators located soda boxes containing six (6) kilogram-sized bricks with a total approximate weight of 6,846 grams which subsequently tested positive for cocaine.

11. Pursuant to a state authorized search warrant, NYSP investigators also searched 15 Mathews Street, Apartment 206, Rochester, New York. Upon execution of the search warrant, no one was located inside of the residence. During a search of the residence, investigators located the following, among other items: approximately 1,926 grams of cocaine; approximately 19 grams of Fentanyl; approximately 3.6 grams of ketamine; approximately 10 grams of MDMA pills; approximately 544 grams of cannabis; drug packaging material; scales; and approximately $25,339 in US Currency. All of the narcotics, aside from the cannabis, were field tested and tested positive for their respective controlled substance. During the search of the residence, investigators also located A. Rucci's driver's

license, passport, receipts in his name, and mail bearing his name.

12. Based on my training and experience, the quantity of narcotics recovered from the Infiniti, owned by A. Rucci and operated at the time by J. Rucci, demonstrates an intent to distribute controlled substances. Based on my training and experience, the quantity of narcotics recovered from 15 Matthews Street, Apt. 206, A. Rucci's primary residence, coupled with the drug packaging material, scales, and currency, demonstrate an intent to distribute controlled substances. Additionally, based on the information learned during the course of the investigation, your affiant believes that J. Rucci was transporting the narcotics in the Infiniti for the purpose of giving them to A. Rucci to redistribute in Rochester, New York.

## PRIOR FELONY CONVICTIONS

13. A. Rucci has a prior felony conviction in Federal Court. In 2007, he was convicted of one (1) count of Title 21 Unites States Code Section 841(a)(1) (possession with intent to distribute cocaine) and one (1) count of Title 18 United States Code Section 924(c)(1) (possession of a firearm in furtherance of a drug trafficking crime).

14. J. Rucci has a prior felony conviction in New York state court. In 2016, he was convicted of Criminal Possession of a Controlled Substance – 3rd, a class B felony, and Tampering with Physical Evidence, a class E felony.

## CONCLUSION

15.     Based on the above information, your affiant submits there is probable cause to believe that on or about November 21, 2025 in the Western District of New York, and elsewhere, A. Rucci and J. Rucci were in violation of Title 21, United States Code, Sections 846 & 841(a)(1) and 841(b)(1)(A) (conspiracy to possess with the intent to distribute and to distribute 5 kilograms or more of cocaine).

*[signature]*
Geordie A. Stutzman
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed to before me
This __26th__ day of November, 2025.

*[signature]*
HONORABLE MARK W. PEDERSEN
United States Magistrate Judge